IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Ardrina Stokes, | | |
| *Plaintiff*, | * | |
| | * | |
| v. | * | Civil No. JFM 8: 11-cv-02620 |
| | * | |
| JPMorgan Chase Bank, NA, et al., | * | |
| *Defendants*. | * | |
| | * | |
| | * | |
| | ****** | |

MEMORANDUM

Plaintiff, Ardrina Stokes ("Stokes" or "plaintiff"), filed a complaint in this court on September 14, 2011 against defendants JPMorgan Chase Bank, N.A. ("JPMorgan"); SouthStar Funding, LLC ("SouthStar"); Kirk K. Smith ("Smith"); Ocwen Financial Corporation ("Ocwen"); Barclays, PLC ("Barclays"); and Universal American Mortgage Company, LLC ("Universal"), (collectively, "defendants"). Stokes seeks an undisclosed amount of actual, compensatory, and punitive damages, as well as statutory damages resulting from defendants' allegedly discriminatory subprime lending practices. In her three-count complaint, Stokes alleges defendants violated (1) the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq.*; (2) the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq.*; and (3) § 1982 of the Civil Rights Act ("§ 1982"), 42 U.S.C. § 1982. Now pending before the court are (1) Smith's motion to dismiss for, *inter alia*, lack of personal jurisdiction (ECF No. 16), (2) non-party Barclay's Bank LC aka Barclay's Bank PLC ("Barclay's Bank") motion to quash service (ECF No. 31), and (3) JPMorgan, Ocwen, and Universal's motions to dismiss for failure to state a claim. (ECF Nos. 12, 13, 14). All issues have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6. For the reasons that follow, all motions are granted and all claims against defendants are dismissed.

1

# BACKGROUND

Over the course of several years, Stokes, a resident of Prince George's County, Maryland, obtained subprime loans[1] from Encore Credit Corporation ("Encore"), SouthStar, Fremont Investment & Loan ("Fremont"), BNC Mortgage, Inc. ("BNC"), and Universal. (Compl. ¶¶ 7–16.) Stokes's claims stem from those loans. She alleges defendant lenders utilized discriminatory policies, practices, and procedures to sell subprime loans in disproportionate numbers to minority borrowers to reap heightened financial rewards from buyers in the secondary mortgage market. (Compl. ¶ 2.) More important to her specifically, Stokes avers that because of her race, defendants "steered" her into purchasing a subprime loan without evaluating her credit, financials, and other relevant qualifications. (Compl. ¶¶ 1–2.) As a result, Stokes brings this action against defendants JPMorgan, SouthStar, Smith (a former principal of now defunct SouthStar), Ocwen, Barclays, and Universal for violations of the ECOA, FHA, and § 1982.[2] (Compl. ¶ 3.)

Stokes describes a nearly identical interaction with each financial institution. She alleges that during the application phase, representatives of the institution asked her race and noted on

---

[1] Each loan at issue was secured by one of the six Prince George's County properties Ms. Stokes owned at the time: 9014 Oriley Drive, Clinton, MD 20735 (the "Oriley Property"); 8912 Pinehurst Drive, Fort Washington, MD 20744 (the "Pinehurst Property"); 2919 Pumpkin Street, Clinton, MD 20735 (the "Pumpkin Property"); 14700 Turner Wootton Parkway, Upper Marlboro, MD 20774 (the "Turner Wootton Property"); 4305 Hatties Progress Drive, Bowie MD 20720 (the "Hatties Progress Property"); and 8695 Greenbelt Road # C-1, Greenbelt, MD 20770 (the "Greenbelt" property). (Compl. ¶ 4–5.)

[2] Several of the claims against defendants relate to mortgage loans sold by defendants' predecessors in interest. Due to acquisitions, JPMorgan, Ocwen, and Barclays assumed liability for the actions of Encore, Fremont, and BNC, respectively. (Compl. ¶¶ 8, 13, 15, 42, 81, 92.) Additionally, SouthStar dissolved in 2007; therefore, Stokes is suing Smith, an alleged former principal of SouthStar, seeking to hold him personally liable for SouthStar's actions. (Compl. ¶¶ 11, 57–58.)

her loan application that she is African American.  (Compl. ¶¶ 45, 61, 70, 84, 95, 106.)

Furthermore, Stokes contends that none of the defendants considered her for anything but a

subprime loan, (Compl. ¶¶ 44, 60, 69, 83, 94, 105), and never assessed her ability to repay the

loan.  (Compl. ¶¶ 54, 65, 78, 89, 111.)  According to Stokes, none of the defendants verified her

income or took further action to evaluate her creditworthiness by looking at financial documents

including her tax returns, W-2s, payroll receipts, bank statements, and retirement account

records.  (Compl. ¶¶ 51, 64, 75, 88, 99, 110.)  Instead, she contends, defendants each asked

"targeted questions to obtain the right information to secure loan approval" and then "steered"

her into purchasing the loans.  (Compl. ¶¶ 48, 55–56, 63, 66–67,72, 79–80, 87, 90–91, 98, 101–

02, 109, 112–13.)  By allegedly targeting her because of her race, and pushing her to accept

subprime mortgages without regard to objective criteria such as credit scores and income, Stokes

avers defendants unlawfully discriminated against her in violation of the FHA, ECOA, and

§ 1982.  (Compl. ¶¶ 114–15.)

Now pending are separate motions to dismiss filed by JPMorgan (ECF No. 12), Ocwen

(ECF No. 13), Universal (ECF No. 15), Smith (ECF No. 16), and a motion to quash by non-party

Barclay's Bank.  (ECF No. 31.)

## ANALYSIS

The defendants have each filed motions to dismiss.  Pursuant to Federal Rule of Civil

Procedure 12(b)(2), defendant Smith seeks to have the claims against him dismissed for lack of

personal jurisdiction.  Pursuant to Federal Rules of Civil Procedure 12(b)(4), Barclay's Bank

moves to quash service.  Lastly, defendants JPMorgan, Ocwen, and Universal move to have their

claims dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6).  I will discuss each in

turn.

3

a.   Smith's Motion to Dismiss for Lack of Personal Jurisdiction

Two conditions must be met for a district court to assert personal jurisdiction over a nonresident defendant: "(1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)).   "With regard to the first requirement, [the district court] must accept as binding the interpretation of Maryland's long-arm statute rendered by the Maryland Court of Appeals." *Id.* (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir. 1993)).   Maryland courts have held that the statutory inquiry merges with the constitutional inquiry. *Id.* (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135 (4th Cir. 1996)); *see Kortobi v. Kass*, 978 A.2d 247, 256 (Md. 2009) ("The purview of the long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution. . . . As a result, our statutory inquiry merges with our constitutional examination.") (internal quotation marks and citations omitted).   The Maryland Court of Appeals has clarified, however, that even though they are coextensive, assessing personal jurisdiction still requires the two-step inquiry—statutory and constitutional.  *See Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (noting that "coextensive" does not mean "that it is now permissible to simply dispense with analysis under the long-arm statute").   Thus, determining personal jurisdiction over a non-resident requires first, assessing whether Maryland's long-arm statutes permits service on the non-resident defendant, and second, whether such service satisfies constitutional due process requirements.  *See Holfield v. Power Chem. Co.*, 382 F. Supp. 388, 390 (D. Md. 1974).

4

The Maryland long-arm statute provides:

(b) A court may exercise personal jurisdiction over a person, who directly or by an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
> (5) Has an interest in, uses, or possesses real property in the State; or
> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann. Cts. & Jud. Proc. § 6-103(b).  If the nonresident defendant's connection with the State of Maryland comes within the reach of the long-arm statute, the court must then consider whether its exercise of jurisdiction is constitutionally permissible.  In order to pass constitutional muster under the Due Process Clause, there must be sufficient "minimum contacts" between the defendant and Maryland such that the exercise of personal jurisdiction in Maryland "does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citing *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Hanson v. Denckla,* 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefit and protection of its laws.")).  In its assessment, the court should focus on "the relationship among the defendant, the forum, and the litigation," *Shaffer v.*

5

*Heitner*, 433 U.S. 186, 204 (1977), to determine whether the defendant "should reasonably anticipate being haled into court" in Maryland. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Personal jurisdiction can be specific or general, depending upon the connection between the defendant and the State of Maryland. *See Miserandino v. Resort Props., Inc.*, 691 A.2d 208, 211 (Md. 1995). A court exercises specific jurisdiction over the defendant when the cause of action arises out of or is related to the defendant's contacts with the forum state. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). A court exercises general jurisdiction over the defendant when the defendant's contacts with the state are not also the basis for the suit, but the defendant's contacts with the state are "continuous, systematic, and fairly extensive." *Id*.; *see Cole–Tuve, Inc. v. Am. Mach. Tools Corp.*, 342 F. Supp. 2d 362, 366 (D. Md. 2004).

The plaintiff bears the burden of proving grounds for personal jurisdiction by a preponderance of the evidence. *Carefirst*, 334 F.3d 390, 396 (citing *Mylan*, 2 F.3d at 59–60). But when a court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *Id*. (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). In determining whether the plaintiff has met its burden, "the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676. All relevant pleadings means the court is "not required . . . to look solely to the plaintiff's proof in drawing [all reasonable inferences in the plaintiff's favor]," and may also look at defendant's assertions and proffered proof regarding defendant's lack of contacts with the forum. *Mylan*, 2 F.3d at 62.

Smith avers this court has no personal jurisdiction. (Smith Mot. Dismiss 1, ECF No. 16.) To support his 12(b)(2) motion, Smith has established several facts by affidavit: he is a resident of the State of Georgia and has resided there since 1974 (Smith Aff. ¶ 3, ECF No. 16-2), he has never resided, conducted any business or solicited sales, owned or leased property, maintained a mailing address, paid taxes, held any license, or was employed in the State of Maryland (Smith Aff. ¶¶ 4–9), and he was never involved with SouthStar's originating, approving, or funding of loan transactions in Maryland. (Smith Aff. ¶ 12.) In effect, he claims he has no contacts with the State of Maryland. None of these assertions are disputed by Stokes. Stokes's only proffered basis of Smith's sufficient contact with the state of Maryland is Smith's position as a former principal of co-defendant SouthStar, a Delaware limited liability company, which filed for Chapter 7 bankruptcy in April of 2007 and is no longer in business. (Compl. ¶ 11; Smith Mem. Supp. Mot. Dismiss 3; Smith Aff. ¶ 2.) Looking at the jurisdictional facts presented in the light most favorable to Stokes, this court does not have general personal jurisdiction because Smith did not engage in continuous and systematic activities within Maryland. The issue, then, is whether Smith's relationship with SouthStar, provides sufficient contact with the State of Maryland for this court to exercise specific personal jurisdiction.

Stokes argues that because Smith was a principal of SouthStar, a financial institution that negotiated a loan with her in Maryland, SouthStar's Maryland contacts should be attributed to Smith for jurisdictional purposes. It is an accepted legal tenet, however, that an individual and a corporation of which that individual is the principal are separate legal entities. *See, e.g.*, *Birrane v. Master Collectors, Inc.*, 738 F. Supp. 167, 169 (D. Md. 1990) (citing *United States v. Van Diviner*, 822 F.2d 960, 963 (10th Cir. 1987)). Based on this, "the general rule . . . [is] that the corporate entity will normally insulate corporate employees, officers, directors, etc., from

personal jurisdiction where suit is brought against them individually." *Holfield v. Power Chem. Co.*, 382 F. Supp. 388, 393 (D. Md. 1974). Thus, "the fact that a corporation is doing business in a state is not sufficient to establish *in personam* jurisdiction over the corporation's directors, officers and agents." *Topik v. Catalyst Research Corp.*, 339 F. Supp. 1102, 1107 (D. Md. 1972), *aff'd*, 473 F.2d 907 (4th Cir. 1972). A corporate officer may "only be hailed into a foreign court based on the corporate officer's *individual* contacts in the forum." *AGV Sports Group, Inc. v. Protus IP Solutions, Inc.*, No. RDB 08-3388, 2009 WL 1921152, at *7 (D. Md. July 1, 2009); *see Harte-Hanks Direct Mkt. v. Varilease Tech.*, 299 F. Supp. 2d 505, 513 (D. Md 2004) ("Personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically flow from personal jurisdiction over the corporation."); *Quinn v. Bowmar Publ'g Co.*, 445 F. Supp. 780, 785 (D. Md. 1978) ("Jurisdiction over individual officers or employees of a corporation may not be predicated upon jurisdiction over the corporation, absent activities by the individuals sufficient to subject them to a long arm statute."). There is no evidence to suggest that Smith was involved in any way in SouthStar's loan transactions in Maryland, let alone in Stokes's specific transaction. (Smith Aff. ¶ 12.) The jurisdiction this court has over SouthStar, which sold a loan to Stokes in Maryland, does not pass to Smith merely because he was a principal of SouthStar in the absence of any individual contacts between Smith and the State of Maryland. It would "offend traditional notions of fair play and substantial justice to attribute corporate acts" to Smith to form the basis of personal jurisdiction. *See Quinn*, 445 F. Supp. at 786.

In response to Smith's motion, and seemingly acknowledging her failure to allege sufficient contacts with the State of Maryland, Stokes asks this court to stay the motion to dismiss and allow limited discovery before the motion is ruled upon. Jurisdictional discovery is

inappropriate, however, where, as here, the plaintiff "offers only speculation or conclusory assertions about contacts with a forum state." *Carefirst*, 334 F.3d 390, 402 (4th Cir. 2003); *see also McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983) (holding district court properly exercised its discretion in denying jurisdictional discovery because plaintiff "had made an insufficient showing that the defendants fell within the reach of Maryland's long-arm statute"); *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 93–95 (2d Cir. 1975) (upholding district court's denying jurisdictional discovery because plaintiff's "threshold failure" to establish personal jurisdiction); *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition.").

Stokes fails to identify any interaction between Smith and the State of Maryland, alleging only that SouthStar brokered and financed her loan in Maryland and that Smith was a former principal of SouthStar.  (Compl. ¶ 11; Pl.'s Opp. 11.)  Smith's potential contacts as a principal of SouthStar are insufficient to make out even a threshold showing of specific jurisdiction. Therefore, as in *Carefirst*, since Stokes's claims of personal jurisdiction are so attenuated, lack any "concrete proffer," and are based on bare allegations in the face of specific denials made by Smith in his affidavit, jurisdictional discovery is unwarranted as Stokes has not made even a prima facie showing of personal jurisdiction.  *Carefirst*, 334 F.3d at 402–03 ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.").

Because Stokes failed to make a sufficient prima facie showing to survive Smith's jurisdictional challenge, pursuant to Federal Rule of Civil Procedure 12(b)(2), all claims against Smith are dismissed.

b.   Barclay's Bank's Motion to Quash Service

Non-party Barclay's Bank moves to quash service pursuant to Federal Rule of Civil Procedure 12(b)(4), on the grounds that the contents of the summons served on Barclay's Bank was defective because the entity named in the summons, Barclay's Bank LC, is a separate entity from Barclays, PLC, the named party in the complaint, and pursuant to Federal Rule of Civil Procedure 12(b)(5), on the grounds that the wrong party—Barclay's Bank LC and not Barclays, PLC—has been served.  Counsel for Barclay's Bank LC advised plaintiff's counsel that the incorrect entity was served and requested that plaintiff either withdraw the service issued or amend the complaint to include allegations against Barclay's Bank LC.  (Barclay's Bank Mem. Supp. Mot. Quash Service 1–3 ECF No. 31-1, Ex. A).  Stokes did neither.

The summons in question was served upon Barclay's Bank LC.  (Summons Issued Against Barclay's Bank LC, ECF No. 9.)  Barclay's Bank LC is not identified in the caption or body of the complaint.  Rather, the complaint identifies and discusses claims against Barclays, PLC.  (Compl. ¶ 14.)  Before Stokes requested and the Clerk issued a summons against Barclay's Bank LC, she requested and the Clerk issued a summons against Barclays, PLC.  (Summons Issued Against Barclays, PLC, ECF No. 2.)  It seems that after failing to effect service on an agent authorized to accept service on behalf of Barclay, PLC, Stokes attempted to effect service on Barclay's Bank LC.  It is also telling that not only has Stokes failed to respond in opposition to Barclay's Bank LC's motion to quash, but after the motion was filed, Stokes requested and the

Clerk again issued a summons against Barclays, PLC.  (Summons Issued Against Barclays, PLC, ECF No. 35).

Federal Rule of Civil Procedure 4, which sets forth the procedural requirements for proper service, requires that the summons be directed to a party named as a defendant in the complaint.  *See* Fed. R. Civ. P. 4(a)(1)(B).  When process is served on a person who "is not the agent of the defendant and is not authorized to receive service of process issued against such defendant, the motion to quash service and to dismiss the defendant from the action should be granted."  *Ballard v. PNC Fin. Servs. Grp., Inc.*, 620 F. Supp. 2d 733, 735 (S.D. W. Va. 2009) (citing *Sunbeam Corp v. Payless Drug Stores,* 113 F. Supp. 31, 46 (N.D. Cal. 1953)).  Barclay's Bank LC is not named as a defendant and there is no indication that it is authorized to accept service for Barclays, PLC.  Stokes does not provide any evidence to the contrary.  Where the validity of service is contested, the burden is on the party claiming proper service has been effected to establish the validity of service.  *See Lee v. FEMA*, No. 1:09-0028, 2010 WL 1027124, at *9 (S.D. W. Va. Feb. 26, 2010), *aff'd*, 406 F. App'x 688 (4th Cir. 2010).

Stokes has clearly not met her burden.  The summons was defective in failing to be directed to a named defendant; therefore, pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5), Barclay's Bank LC's motion to quash is granted and Barclay's Bank LC is dismissed from this litigation.

c.  JPMorgan, Ocwen, and Universal's Motions to Dismiss

 "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (internal citations omitted).  Consequently, to survive a motion to dismiss under Federal

11

Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint must contain sufficient facts to "state a claim for relief that is plausible on its face," *Id.* at 570, meaning the factual allegations "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations and alterations omitted).  When ruling on the sufficiency of the claims asserted, the court must "accept the well-pled allegations of the complaint as true," and "construe facts and reasonable inferences in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  But the court need not accept legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events.  *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  In essence, the facts pled must permit the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.  The plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A plaintiff, therefore, cannot overcome a motion to dismiss where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 1950.

Defendants JPMorgan, Ocwen, and Universal each file motions to dismiss on the grounds that Stokes's failed to assert claims upon which relief can be granted.[3]  The defendants focus principally on a statute of limitations argument, but also argue for dismissal based on insufficient

---

[3] Although all three file separate motions, the arguments in each are identical and therefore I discuss them together.  All three focus principally on a statute of limitations argument, but also argue for dismissal based on insufficient pleading.  Because I ultimately find the statute of limitations argument conclusive I do not reach their insufficient pleading argument.  I do, however, have substantial doubts that Stokes's claims are sufficient to form the basis for a cause of action under the FHA, ECOA, or § 1982.

pleading.  I ultimately find the statute of limitations argument conclusive and therefore do not reach defendants' insufficient pleading argument.

Defendants argue Stokes's claims are time barred by the FHA and ECOA's two-year limitations statute, and by § 1982's three-year limitations statute.  (JPMorgan Mem. Supp. Mot. Dismiss 5–7, ECF No. 12-1; Ocwen Mem. Supp. Mot. Dismiss 5–7, ECF No. 13-1; Universal Mem. Supp. Mot. Dismiss 6–11, ECF No. 15-1.)

The FHA states that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an allegedly discriminatory housing practice . . . whichever occurs last."  42 U.S.C. § 3613(a)(1)(A); s*ee Shield Out Constitutional Rights & Justice v. Hicks*, No. DKC 09-0940, 2009 WL 3747199, at *7 (D. Md. Nov. 4, 2009).  Similarly, the ECOA provides that, "no action shall be brought later than two years from the date of the occurrence of the violation."[4] 15 U.S.C. § 1691e(f), *amended by* 2010 Amendments, Pub. L. 111-203, § 1085(7).  Although § 1982 does not itself contain a time limitation, the Fourth Circuit has held that the statute of limitations found in the "most analogous" state law applies.  *See Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002); *see also Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987).  Maryland's general three year statute of limitations for personal injury claims is most appropriate.  *See* Md. Cts & Jud. Proc. Code Ann. § 5–101; *Jersey Heights Neighborhood Ass'n*

---

[4] As of July 21, 2011, the Dodd-Frank Wall Street Reform and Consumer Protection Act amended the ECOA by providing for a five-year statute of limitations.  12 U.S.C. §§ 5301 *et seq*., Pub. Law No. 111-203, H.R. 4173 (July 21, 2010), §§ 1085(7).  However, as a general principle, claims that would have expired under the previous two-year statute of limitations cannot retroactively be revived.  *See generally* 54 C.J.S. *Limitations of Actions* § 15 ("[O]nce a statute of limitations has run, [the party relying on the statute has a vested property right in the statute of limitations defense, and changes to the period of limitations cannot be applied retroactively to extinguish that right."). In any event, the amendment contains no express language and no indication that it is to retroactively alter the limitations period of prior actions.

*v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) ("[T]he personal nature of the right against discrimination justifies applying the state personal injury limitations period.").  In sum, the relevant statutes of limitations for Stokes's claims are two years under the FHA and ECOA, and three years under § 1982.

Although Stokes fails to specify in her complaint the dates she entered into the loans, defendants provide the missing information through exhibits containing notes to evidence the loans and deeds of trust to secure her obligations.[5]  From the loan documents provided by defendants, it is undisputed that Stokes entered into the loans at issue in 2005 and 2006, more than three years ago.  (JPMorgan Mem. Supp. Mot. Dismiss, Ex. B (executed December 22, 2005); Ocwen Mem. Supp. Mot. Dismiss, Ex. A (executed February 28, 2005); Universal Mem. Supp. Mot. Dismiss, Ex. A (executed November 20, 2006).  The relevant statutes of limitations began to run on the dates Stokes entered each loan.  At the time of the loans, Stokes was aware of her alleged injury because all aspects of the discriminatory subprime lending practices that she alleges as the basis of her cause of action had occurred by that time, overtly, to her directly.  *See Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1162 (4th Cir. 1991).  ("Federal law holds that the time of accrual is when [the] plaintiff knows or has reason to know of the injury which is

_____

[5] It is widely acknowledged that in certain circumstances a court may consider documents, such as notes or deeds of trust, outside the plaintiff's complaint without converting a motion to dismiss into a motion for summary judgment.  *See* Fed. R. Civ. P. 10(c); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 (3d ed. 2004); *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) ("[W]hen a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'") (citing *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  Additionally, a judge may take judicial notice of matters of public record.  *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Sec'y of State for Def. v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004).

the basis of the action."); *Davenport v. Litton Loan Servicing, LP,* 725 F. Supp. 2d 862, 875 (N.D. Cal. 2010) (dismissing FHA claim as untimely where the plaintiff had not alleged any unlawful conduct after the origination and culmination of her loan, which occurred more than two years prior to her filing her complaint); *Goodwin v. Exec. Tr. Servs., LLC,* 680 F. Supp. 2d 1244, 1251 (D. Nev. 2010) (dismissing FHA claim where "[t]he conduct giving rise to [the] claim [was] the issuance of a 'less-than-favorable loan,' " and the statute of limitations began running on the date the plaintiff executed the deed of trust, more than two years before she initiated the action). Stokes's claim that defendants steered her into a subprime loan because of her race is based on conduct that undoubtedly concluded with the close of the loan transactions. Therefore, to ensure her claims were not time-barred, Stokes needed to file suit under the FHA and ECOA in 2007 or 2008, depending on the loan at issue, and under § 1982 by 2008 or 2009, depending on the loan at issue. Stokes filed the complaint in this case on September 14, 2011; thus, her claims are time-barred.

In her opposition to defendants' motions to dismiss, Stokes does not contest the fact that she entered into the loans nearly five years ago or that under a straight application of the relevant statutes of limitations her claims are stale. She argues, however, that based on a "continuing violations" theory, the relevant statutes of limitations should be tolled in order to make her claims timely. (Pl.'s Opp. 7–8, ECF No. 22.) Unfortunately, there is a critical mistake in Stokes's understanding and application of this theory.

Relying principally on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), Stokes avers her claims are timely by application of the continuing violation doctrine. (Pl.'s Opp. 8.) Although her reading of *Havens Realty* and the continuing violation doctrine is correct, she fails to see that her claims are easily distinguished from those brought in that case. In *Havens*,

15

African-American plaintiffs brought claims against Havens Realty under § 804 of the FHA, alleging the apartment complex owners falsely informed them about apartment availability on multiple occasions. *Havens*, 455 U.S. at 368. The majority of times they received false information occurred beyond the relevant 180-day statute of limitations period. *Id*. at 380. But, one of the occasions occurred within the statutory period and was therefore not time-barred. *Id.* The Supreme Court held that by way of the continuing violation doctrine, all claims, including those time-barred, could come in because at least one of the alleged incidents fell within the limitations period. *Id.* at 380–82. Conversely, in the case at hand, *none* of the allegedly discriminatory loans closed within the relevant limitations period. Additionally, the allegations that five separate and independent defendants engaged in discrete, discriminatory lending transactions with Stokes are easily distinguished from the "continuing violation" in *Havens,* where a single defendant discriminated against multiple plaintiffs. The continuing violation doctrine as expressed in *Havens* is therefore inapplicable and does not revive Stokes's claims. *See Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 291 (S.D.N.Y. 2011) ("[C]ourts that have found a continuing violation . . . have done so in cases involving multiple plaintiffs alleging multiple, specific, and ongoing acts of discrimination, on specific dates, as opposed to general assertions that the defendants engaged in discriminatory practices . . . vague or conclusory claims regularly meet dismissal.")

Finally, Stokes tries to prevent dismissal of her claims as untimely by contending "there is no information as to when the discriminatory practices last occurred" and cites to an unreported District of Maryland case, *Ragland v. A.W. Indus.*, No. DKC 2008-1817, 2009 WL 2507426, at *2 (D. Md. Aug. 13, 2009), for the proposition that a statute of limitations defense in unavailable at the 12(b)(6) stage when the statute of limitations applicability is not clear from the

face of the complaint.  *Ragland*, 2009 WL 2507426, at * 2.  Stokes is correct that dismissal is proper only "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense."  *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996).  However, while Stokes states "it is unknown when the last instance of discriminatory conduct took place," and that "Defendants' asserted defense is not clearly available from the face of the complaint," (Opp. Mem 10), I find these statements to be erroneous.  Each loan transaction was recorded and Stokes's purposeful omission of these dates does not make them "unknown."  The face of the complaint, appropriately supplemented by public records,  establishes that Stokes waited until September 14, 2011 to file this action—just under five years since she executed the last mortgage loan in question.  Therefore, her claims are stale, far past the relevant two-year and three-year statutes of limitations.

In sum, looking at the pleaded allegations in the light most favorable to Stokes, it is undeniable that defendants raise a valid affirmative defense and meet their burden of establishing that, on the face of the complaint, the relevant statutes of limitations bar Stokes's claims.  *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).").  Thus, Stokes's claims are untimely, and pursuant to Federal Rule of Civil Procedure 12(b)(6), claims against JPMorgan, Ocwen, and Universal are dismissed.

**CONCLUSION**

I find that pursuant to Federal Rule of Civil Procedure 12(b)(2) this court has no personal

jurisdiction over defendant Smith and therefore dismiss all claims against him.  Additionally,

pursuant to Federal Rule of Civil Procedure 12(b)(4), service on Barclay's Bank LC is quashed

and Barclay's Bank LC is dismissed from this suit.  Finally, pursuant to Federal Rule of Civil

Procedure 12(b)(6), Stokes's claims against defendants JPMorgan, Ocwen, and Universal are

time-barred and therefore dismissed.

A separate order to this effect is being entered herewith

February 16, 2012                                                        /s/
Date                                                        J. Frederick Motz
                                                        United States District Judge